USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 11/7/07

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X

UNITED STATES OF AMERICA,

    - against -

MOISES DIAZ,

        Defendant.

------------------------------------------X

06 Cr. 1132-01 (RWS)

SENTENCING OPINION

**Sweet, D.J.**

On March 5, 2007, Moises Diaz ("Diaz" or the "Defendant") appeared before the Honorable Kevin Nathaniel Fox of this District and pleaded guilty to one count of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(a)(2) and (h). For the reasons set forth below, Diaz will be sentenced to a twenty-four month term of imprisonment, to be followed by a two-year term of supervised release. Diaz also will be required to pay a special assessment of $100.

**Prior Proceedings**

Diaz was named in a one-count information filed in the Southern District of New York on December 12, 2006 charging him with conspiracy to commit money laundering. Diaz pleaded guilty to the information on March 5, 2007. This Court accepted the guilty plea on April 3, 2007. Diaz's sentencing is scheduled for November 13, 2007.

**The Sentencing Framework**

In accordance with the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), and the Second Circuit's decision in United States v. Crosby, 397 F.3d 103 (2d Cir. 2005), the sentence to be imposed was reached through consideration of all of the factors identified in 18 U.S.C. § 3553(a), including the advisory Sentencing Guidelines (the "Guidelines") established by the United States Sentencing Commission. Thus, the sentence to be imposed here is the result of a consideration of:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed --

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

2

- (B) to afford adequate deterrence to criminal conduct;

- (C) to protect the public from further crimes of the defendant; and

- (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for --

- (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines ...;

(5) any pertinent policy statement ... [issued by the Sentencing Commission];

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

A sentencing judge is permitted to find all the facts appropriate for determining a sentence, whether that sentence is a so-called Guidelines sentence or not. See Crosby, 397 F.3d at 114-15.

3

## The Defendant

The Court adopts the facts set forth in the Probation Department's Presentence Investigation Report ("PSR") with respect to Diaz's personal and family history.

## The Offense Conduct

The following description draws on the PSR. The specific facts of the underlying conduct are adopted as set forth in that report.

On September 11, 2006, at approximately 2:00 p.m., Diaz approached an individual ("I-1") who was sitting on a railing in front of the Toys-R-Us store located near White Plains Road and Story Avenue in the Bronx.

Diaz motioned to I-1 in the direction of Story Avenue, the direction from which Diaz had approached. Diaz then spoke with I-1 for approximately one minute, and then walked toward Story Avenue. As Diaz walked away from I-1, he moved his head back and forth several times, appearing to surveil the activity in the parking lot of Toys-R-Us. At approximately 2:10 p.m., Diaz approached a Toyota Camry (the "Vehicle") parked in a parking lot

4

opposite the Toys-R-Us store and opened the trunk of the Vehicle. Diaz removed a cardboard box labeled "DVD" (the "Box") from the trunk of the Vehicle.

Two Government agents who were conducting surveillance of the Toys-R-Us parking lot (the "Agents") subsequently approached Diaz, identified themselves as law-enforcement agents, and asked Diaz if they could speak with him. Diaz agreed to speak with the Agents and consented to a search of the Box that he was holding. The Box was secured with tape.

The Agents opened the Box in front of Diaz. It contained approximately $185,000 in bundled U.S. currency. This currency was bound together with rubber bands and separated by denomination. Diaz then gave consent to the Agents to search the Vehicle. One of the Agents found an additional $15,000 in bundled U.S. currency in the glove box of the Vehicle.

One of the Agents then advised Diaz of his Miranda rights in Spanish. Diaz waived these rights and agreed to speak with the Agent. Diaz informed the Agent that on September 7, 2006, an individual named "Fabio" told him that he could make $500 if he delivered a package to another individual. Diaz had asked Fabio if the package contained drugs, and Fabio told him that the package

5

did not contain drugs. Fabio provided Diaz with the phone number of a woman named "Maria," whom he needed to contact to pick up the package.

On September 8, 2006, Diaz called Maria. Maria gave Diaz a phone number for "George," the individual to whom Diaz was to deliver the package. Diaz made several unsuccessful attempts to reach George over the weekend of September 9, 2006.

On September 11, 2006, Diaz spoke to George over the telephone and agreed to meet George in the parking lot of the Toys-R-Us located near White Plains Road and Story Avenue in the Bronx. After having contacted George, Diaz called Maria and agreed to meet her at approximately 1:00 p.m., on September 11, 2006, near the vicinity of Broadway and West 215th Street in Manhattan.

Diaz subsequently drove to Broadway and West 215th Street and picked up the Box from Maria. Diaz asked Maria whether the Box contained drugs. Maria informed Diaz that it did not.

After meeting with Maria, Diaz drove to the Toys-R-Us store near White Plains Road and Story Avenue to deliver the Box to George. Diaz knew that the currency inside the Box had been derived from an illegal source, since he assumed that if it were

6

legal, the owners would have deposited the money in the bank.

Diaz had two cell phones, one of which he intended to discard after delivering the Box that Maria had given him to give to George.

After Diaz made these statements to the Agent, he was arrested.

Both the U.S. currency and the Box tested positive for the presence of cocaine. In addition, based upon the Agent's experience, the way in which the $200,000 in U.S. currency was bundled and bound was a clear indication that the money constituted narcotics-trafficking proceeds. However, Diaz contends that he was not aware of the origins of the currency found in the Box, nor was he aware of how the currency was bundled and packaged.

## The Relevant Statutory Provisions

The maximum term of imprisonment is twenty years, pursuant to 18 U.S.C. § 1956(a)(2)(B)(ii).

If a sentence of imprisonment is imposed, the Court may impose a term of not more than three years' supervised release,

pursuant to 18 U.S.C. § 3583(b)(2).

Diaz is eligible for not less than one nor more than five years' probation by statute, pursuant to 18 U.S.C. § 3561(c)(1). Because the offense is a felony, one of the following must be imposed as a condition of probation unless extraordinary circumstances exist: a fine, restitution, or community service, pursuant to 18 U.S.C. § 3563(a)(2).

Pursuant to the Violent Crime Control and Law Enforcement Act of 1994, all offenders on probation, parole or supervised release for offenses committed after September 13, 1994, are required to submit to one drug test within fifteen days of commencement of probation, parole or supervised release and at least two drug tests thereafter for use of a controlled substance, unless ameliorated or suspended by the court due to its determination that the defendant poses a low risk of future substance abuse as provided in 18 U.S.C. §§ 3563(a)(5) and 3583(d).

The maximum fine is $500,000, pursuant to 18 U.S.C. § 1956(a)(2)(B)(ii). A special assessment in the amount of $100 is mandatory, pursuant to 18 U.S.C. § 3013.

**The Guidelines**

The November 1, 2006 edition of the United States Sentencing Commission Guidelines Manual (as amended effective May 1, 2007) has been used in this case for calculation purposes, pursuant to section 1B1.11(a).

The guideline for violations of 18 U.S.C. § 1956 is found in section 2S1.1. Since it appears that the defendant did not commit the underlying offense from which the laundered funds were derived, the base offense level is determined by the number of offense levels from the table in section 2B1.1 corresponding to the value of the laundered funds, plus eight levels. Because Diaz conspired to lauder $200,000 in funds, the base level is 18. Since the defendant was convicted under 18 U.S.C. § 1956, pursuant to section 2S1.1(b)(2)(B), a two-level increase is warranted. Because Diaz has demonstrated acceptance of responsibility through him allocution and subsequent conduct prior to the imposition of sentence, a three-level reduction is warranted, pursuant to section 3E1.1(a). The resulting adjusted offense level is 17.

Diaz has no known criminal convictions. Thus, Diaz has a criminal history category of I.

Based on a total offense level of 17 and a criminal history category of I, the Guidelines range for imprisonment is 24 to 30 months.

The Guidelines range for a term of supervised release is at least two but not more than three years, pursuant to section 5D1.2(a)(2). If a sentence of imprisonment of one year or less is imposed, a term of supervised release is not required but is optional, pursuant to section 5D1.1(b). Supervised release is required if the Court imposes a term of imprisonment of more than one year or when required by statute, pursuant to section 5D1.1(a).

Diaz is not eligible for probation because the applicable Guidelines range is in Zone D of the sentencing table, pursuant to section 5B1.1, cmt. 2.

The fine range is from $5,000 to $500,000, pursuant to section 5E1.2(c)(3) and (c)(4). Subject to the defendant's ability to pay, in imposing a fine, the Court shall consider the expected costs to the Government of any imprisonment, probation, or supervised release. Section 5E1.2(d)(7). The most recent advisory from the Administrative Office of the United States Courts suggests a monthly cost of $2036.92 to be used for imprisonment, a monthly cost of $294.60 for supervision, and a monthly cost of $1,799.04

for community confinement.

## The Remaining Factors of 18 U.S.C. § 3553(a)

Having engaged in the Guidelines analysis, this Court also gives due consideration to the remaining factors identified in 18 U.S.C. § 3553(a) in order to impose a sentence "sufficient, but not greater than necessary," as is required in accordance with the Supreme Court's decision in Booker, 543 U.S. 220, and the Second Circuit's decision in Crosby, 397 F.3d 103. Pursuant to all of the factors, it is hereby determined that a Guidelines sentence is warranted.

## The Sentence

Diaz will be sentenced to a twenty-four month term of imprisonment, to be followed by a two year term of supervised release.

As Diaz has kept all court appearances, has been in compliance with all terms and conditions of his pretrial release, and is not viewed as a flight risk or a danger to the community, he is deemed a good candidate for voluntary surrender. Diaz is therefore directed to report to the Bureau of Prisons no later than

11

January 7, 2008 to commence a twenty-four month term of imprisonment. Diaz is further directed to report to the nearest United States Probation Office within seventy-two hours of release from custody to commence a two year term of supervised release. It is recommended that Diaz be supervised by the district of his residence.

As mandatory conditions of his supervised release, Diaz shall: (1) not commit another federal, state, or local crime; (2) not illegally possess a controlled substance; (3) not possess a firearm or destructive device; (4) cooperate in the collection of DNA as directed by the probation officer and (5) submit to one drug test within 15 days of release and two periodic drug tests thereafter for use of a controlled substance.

Furthermore, the standard conditions of supervision (1-13), outlined in the judgment, shall be imposed with the following additional special conditions:

> (1) The defendant shall submit his person, residence, place of business, vehicle, or any other premises under his control to a search on the basis that the probation officer has reasonable belief that contraband or evidence of a violation of the conditions of probation may be found. The search must be conducted at a reasonable time and in reasonable manner. Failure to submit to a search may be grounds for revocation. The defendant shall inform any other residents that the premises may be subject to search pursuant to this condition.

In consideration of all the factors set forth in 18 U.S.C. § 3572(a), it does not appear that the defendant is able to pay a fine, so the fine in this case shall be waived.

A special assessment of $100, payable to the United States, is mandatory and shall be due immediately.

The terms of this sentence are subject to modification at the sentencing hearing scheduled for November 13, 2007.

It is so ordered.

**New York, NY**
**November 7, 2007**

ROBERT W. SWEET
U.S.D.J.